**CSD 1001A** [07/01/18]
Name, Address, Telephone No. & I.D. No.

Norman Shaw
308 Corto Street
Solana Beach, CA 92075
(619) 787-7608

In Pro Per

Order Entered on
December 23, 2019
by Clerk U.S. Bankruptcy Court
Southern District of California

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re

Norman Shaw

                                        Debtor.

BANKRUPTCY NO. 14-01433-LT11

Date of Hearing: October 3, 2019
Time of Hearing: 2:00 p.m.
Name of Judge: Hon. Laura S. Taylor

## ORDER ON
### FINAL APPROVAL AND CONFIRMATION OF DEBTOR'S INDIVIDUAL CHAPTER 11 COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATMENT

The court orders as set forth on the continuation pages attached and numbered _____ through _____ with exhibits, if any, for a total of _____ pages.  Motion/Application Docket Entry No. _____.

//

//

//

//

//

//

//

DATED:        December 23, 2019

Judge, United States Bankruptcy Court

CSD 1001A [07/01/18]                                                          Page **2** of **2**

ORDER ON FINAL APPROVAL AND CONFIRMATION OF DEBTOR'S INDIVIDUAL CHAPTER 11 PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT
DEBTOR: NORMAN SHAW                                              CASE NO: 18-01433-LT11

On October 3, 2019 the proposed individual Chapter 11 Combined Plan of Reorganization and Disclosure Statement, dated August 27, 2019 (Dkt. 170), a copy of which is attached hereto as EXHIBIT A, came before the Court after approval of the Dislcosure Statement and the procedures for consideration of confirmation and with notice as required by law and this Court's order.  Appearances were noted on the record. Having considered the moving papers and the arguments of counsel, and good cause appearing therefrom, the Court finds that the Plan meets all of the statutory requirements of 11 U.S.C. Section 1129 and the Plan is hereby confirmed.

IT IS SO ORDERED

Approved as to Form:

Leslie A. Skorheim
Trial Attorney for UST

CSD 1001A

/+
CSD 1152 [4/21/16]

Name, Address, Telephone No. & I.D. No.

**Norman Shaw**
308 Corto Street
Solana Beach, CA 92075
(619) 787-7608

In Pro Per

---

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

---

In Re:   Norman Shaw

                                        Debtor,

Bankruptcy No. 18-01433-LT11

---

## PROPOSED INDIVIDUAL CHAPTER 11 COMBINED PLAN OF REORGANIZATION
### Amended August 27, 2019

### INTRODUCTION

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan describes how each creditor's claim will be treated if the Plan is confirmed.

Section 1 contains the treatment of administrative claims. Section 2 contains the treatment of priority claims. Section 3 contains the treatment of creditors with secured claims. Section 4 contains the treatment of general unsecured creditors: 100% of their allowed claims pursuant to the current contract on the existing debt.

The creditors are divided into classes (as shown in the table below.) Secured creditors are in Class 1 and discussed in Section 3. Each secured creditor has its own subclass. Unsecured creditors are in Class 2 and discussed in Section 4.

| Class | Name of Creditor |
|-------|------------------|
| 1A | JP Morgan Chase Bank NA |
| 1B | Franchise Tax Board |
| 2A | Franchise Tax Board; Internal Revenue Service. |
| 2B | Internal Revenue Service; Franchise Tax Board; Nelnet Student Loan, Veritext, Capital One, Esquire Services, Knox Services |

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [DATE]. The Bankruptcy Court will hold a hearing on confirmation of the Plan on October 3, 2019 at 2:00 P.M. If there is any modification to the Plan, the Bankruptcy Court will determine whether it is a material modification and whether a further hearing, re-voting, or change of any deadline is required.

CSD 1152                                        1

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation.  Exhibit 1 includes background information regarding Debtor, the events that led to the filing of the bankruptcy petition, a description of significant events that have occurred during this bankruptcy and a summary of this Chapter 11 Plan.  Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation.  Exhibit 3 contains a summary of Debtor's post-petition Operating Reports.  Exhibit 4 shows Debtor's projected post-confirmation monthly income and expenses.  Exhibit 5 describes how much Debtor is required to pay on the Effective Date of the Plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here.  YOU ARE STRONGLY ENCOURAGED TO READ THE PLAN CAREFULLY AND TO CONSULT AN ATTORNEY TO HELP YOU DETERMINE HOW TO VOTE AND WHETHER TO OBJECT TO CONFIRMATION OF THE PLAN.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts.  The Plan payments shall begin on the Effective Date as defined in Section 8(a).  Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan.  If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights.  Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments.  Enforcement of the Plan, discharge of the Debtor, and creditors' remedies, if Debtor defaults, are described in detail in Sections 6 and 7 of the Plan.

## SECTION 1:  TREATMENT OF ADMINISTRATIVE CLAIMS

1(a)    Professional Fees.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the Bankruptcy Court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Chris Ford, Attorney assisting Debtor with TILA appellate brief | $57,415.22 disputed |
| | |

The following professionals have agreed to accept payment over time as follows.  Payments will be made [MONTHLY/ QUARTERLY], due on the [NUMBER] day of the [MONTH/QUARTER], starting [MONTH & YEAR] or upon approval by the Bankruptcy Court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| None | | | |

2

|  |  |  |  |
|---|---|---|---|
|  |  |  |  |

**Estate professionals are <u>not</u> entitled to vote on confirmation of the Plan.**

1(b)    <u>Post-Confirmation Compensation of Professional Persons</u>.

Compensation for services rendered and for reimbursement of expenses by a professional person after the Effective Date need not be approved by the Bankruptcy Court.  Professional persons may invoice the reorganized Debtor (or other responsible third-party) directly, and the reorganized Debtor (or other responsible third-party) may pay such invoices without further order from the Bankruptcy Court.

1(c)    <u>Other Administrative Claims</u>.

Debtor will pay other allowed claims entitled to priority under 11 U.S.C. § 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which must be paid when normally due and payable (these creditors are not listed below). Creditors holding administrative claims not listed in the table below must file an administrative claim within 30 days of notice of the Effective Date.

**Administrative claimants are <u>not</u> entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| Sea Coast now First Team - Cindy De Phillips | Sales commission on sale of real property. |
|  |  |

1(d)    <u>United States Trustee Fees</u>.

All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

## SECTION 2:  TREATMENT OF PRIORITY CLAIMS

2(a)    <u>Tax Claims</u>.

The Debtor will pay claims entitled to priority under § 507(a)(8) the full amount allowed on the effective date.

**Priority tax claimants are <u>not</u> entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|

| Internal Revenue Service | $43,500.00 | 6% | $43,500.00 | 1 |
|---|---|---|---|---|
| California Franchise Tax Board | $12,676.26 | 4% | $12,676.26 | 1 |

2(b)    Unsecured Domestic Support Obligation Claims Entitled to Priority under § 507(a)(1).

Debtor proposes to pay each claim in this class in full over [NUMBER] years, with [NUMBER] % post-confirmation interest. Payments will be made in equal [MONTHLY/QUARTERLY] amortized installments, due on the first day of each calendar [MONTH/QUARTER], starting on the first such date after the Effective Date.

**This class is impaired and entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| None | | | | |
| | | | | |

2(c)    Wage and Commission Claims Entitled to Priority under § 507(a)(4).

The Debtor proposes to pay each claim in this class in full over [NUMBER] years, with [NUMBER] % post-confirmation interest. Payments will be made in equal [MONTHLY/QUARTERLY] amortized installments, due on the first day of each calendar [MONTH/QUARTER], starting on the first such date after the Effective Date.

**This class is impaired and entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| None | | | | |
| | | | | |

## SECTION 3:  TREATMENT OF SECURED CLAIMS

3(h)    Property to Be Sold.

| Class | Name of Creditor | Collateral | Value of Collateral | Monthly Payment |
|---|---|---|---|---|
| 1A | JP Morgan Chase Bank NA | Home @ 308 Corto St. Solana Beach, CA 92075 | 3.5 mill | TBD |
| 1B | Franchise Tax Board | | 3.5 mill | TBD |

4

upon closing of the sale of the Corto Street property, Debtor will resume payments to Nelnet under the terms of the contract.

**This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated in Section 8(b), below, whether a particular claim is disputed.

## SECTION 5: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5(a)   Executory Contracts/Unexpired Leases Assumed.

Debtor assumes the following executory contracts and/or unexpired leases upon the Effective Date of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation arrears to be cured will be paid [SELECT ONE: (in full on the Effective Date) (in [NUMBER] equal [MONTHLY/QUARTERLY] installments beginning on the first day of [MONTH & YEAR]].

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Cure Installment Amount | Number of Installments |
|---|---|---|---|---|
| Nelnet | Student Loan Agreement | 0 | 0 | 0 |
| | | | | |

5(b)   Executory Contracts/Unexpired Leases Rejected.

Debtor rejects all executory contracts and/or unexpired leases not previously assumed or listed in Section 5(a), above, as of the Effective Date of this Plan and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the Bankruptcy Court. Claims arising from rejection of executory contracts or unexpired leases have been included in Section 4 (general unsecured claims). Each entity that is a party to an executory contract or unexpired lease rejected pursuant to this Plan shall be entitled to file a proof of claim for damages alleged to arise from such rejection not later than 30 days after the Effective Date.

## SECTION 6: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

6(a)   Discharge.

Debtor shall not receive a discharge of debts until Debtor makes all payments due under the Plan or the Bankruptcy Court grants a hardship discharge.

Signed by Judge Laura Stuart Taylor December 23, 2019

6(b)    Vesting of Property.

On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Section 7(e) below.

6(c)    Plan Creates New Obligations.

Except as provided in Sections 6(d) and 7(d), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

6(d)    Claims Not Affected by Plan.

Upon confirmation of the Plan, and subject to Section 6(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding Sections 7(a), 7(b), 7(c), and 7(d) below, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under 11 U.S.C. §§ 1124(2)(A) and (D).

## SECTION 7:  REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN

7(a)    Creditor Action Restrained.

The confirmed Plan is binding on every creditor whose claims are provided for in the Plan.  Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Section 6(d) above.

7(b)    Obligations to Each Class Separate.

Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Section 7, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

**7(c)**    <u>Material Default Defined</u>.

If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 14 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default, party-in-interest, or United States Trustee may file and serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default and request for entry of an order declaring default. If Debtor fails within 14 days after the date of service of the notice of default either: (i) to cure the default; (ii) to file and serve a motion for an extension of time to cure the default; or (iii) to file and serve a motion for a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class. If Debtor is in Material Default under the Plan, the complaining creditor may then submit its order declaring Material Default. The provisions of this paragraph do not preclude the United States Trustee from otherwise seeking an order to dismiss or convert the case for cause.

**7(d)**    <u>Remedies Upon Material Default</u>.

Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the Bankruptcy Court, and may pursue its lawful remedies to enforce and collect Debtor's obligations under the Plan.

**7(e)**    <u>Effect of Conversion to Chapter 7</u>.

If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in 11 U.S.C. § 348(f) upon the conversion of a case from Chapter 13 to Chapter 7. Pursuant to order of this court: if the Debtor's residence at 308 Corto Street, Solana Beach, CA ("Residence") is not sold by December 31, 2019, this case will be converted to Ch.7; and if the plan is not confirmed by October 3, 2019, the Residence must be sold by October 31, 2019 or this case will be converted to Ch.7.

**7(f)**    <u>Retention of Jurisdiction</u>.

The Bankruptcy Court retains jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended or modified; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this Court (see Section 8(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Proc. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

## SECTION 8: GENERAL PROVISIONS

8(a)   <u>Effective Date of Plan</u>.

The Effective Date of the Plan is the thirtieth day following the date of the close of escrow for the sale of 308 Corto Street, Solana Beach, CA 92075 or January 31, 2020, whichever date occurs first. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8(b)   <u>Disputed Claim Reserve</u>.

Debtor disputes the following claims:

| Class | Name of Creditor | Amount According to Creditor | Amount According to Debtor |
|-------|------------------|------------------------------|----------------------------|
| 1A | JP Morgan Chase Bank NA | $1,867,673.51 | $1,114,000.00 |

8(c)   <u>Cramdown</u>.

Pursuant to 11 U.S.C. § 1129(b), Debtor reserves the right to seek confirmation of the Plan despite its rejection by one or more classes of creditors. Debtor's ability to "cramdown" this Plan over the objections of creditors is limited, however, by the "Absolute Priority Rule." The Absolute Priority Rule provides, in essence, that junior claimants, including Debtor, are barred from taking anything under the Plan unless senior claimants are paid in full. Debtor provides new value to support the Plan, or creditors accept the Plan. In the present case, Debtor does retain property and proposes to pay 100% of creditors' claims.

8(d)   <u>Severability</u>.

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

8(e)   <u>Governing Law</u>.

Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

8(f)   <u>Lawsuits and Other Claims for Relief</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Insider Y/N | Creditor Y/N | Nature of Claim |
|-------|-------------|--------------|-----------------|
| JP Morgan Chase Bank NA | N | Y | Debtor's causes of action for bank's failure to honor a valid notice of rescission and violation of the Truth in Lending Act (TILA). |

Without limiting the foregoing, Debtor retains all causes of action that they have against any party, whether arising pre- or post-petition, and all such causes of action vests in the reorganized Debtor on the Effective Date. The nondisclosure of unknown causes of action is not a settlement, compromise, waiver or release of such cause of action, and does not judicially estop the Debtor from asserting any such cause of action as a claim or defense. Confirmation of the Plan does not constitute a settlement, compromise, waiver, or release of any cause of action unless the Plan or Confirmation Order specifically and unambiguously so provide.

8(g)   Notices.

Any notice to the Debtor must be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:


Norman Shaw

308 Corto Street

Solana Beach, CA 92075


8(h)   Post-Confirmation United States Trustee Fees.

Following confirmation, Debtor must continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor must file with the Bankruptcy Court quarterly reports in the form specified by the United States Trustee for that purpose.

Signed by Judge Laura Stuart Taylor December 23, 2019

Dated: August 27, 2019

Norman Shaw
Debtor

Joint Debtor

In Pro Per
Attorney for Debtors

### Debtor Certification

I,  Norman Shaw  am the Debtor in the

above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the

Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Southern District of

California, (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or

modifications to any provision of the Standard-Form Plan.


The following provisions of the Standard-Form Plan have been altered or otherwise modified.

Page 1- Introduction- Added that the unsecured creditor will receive 100% of the debt owed.

Pages 3 & 4-Section 2(a) Tax Claims – Deleted language related to payment of these claims over time

and added language that the allowed amount of these claims will be paid in full on the effective date.

Page 4- Section 2(a)- Tax Claims- Deleted language related to the "Absolute Priority Rule."

Page 5- Section 3- Deleted payment option subsections "a" through "g."

Page 8- Section 7(e)- Added. "Pursuant to order of this court: if the Debtor's residence at 308 Corto

Street, Solana Beach, CA ("Residence") is not sold by December 31, 2019, this case will be converted

to Ch.7; and if the plan is not confirmed by October 3, 2019, the Residence must be sold by October

31, 2019 or this case will be converted to Ch.7."

Page 9- Section 8A – Added "The Effective Date of the Plan is the thirtieth day following the date of the

close of escrow for the sale of 308 Corto Street, Solana Beach, CA 92075 or January 31, 2020,

whichever date occurs first."

Page 12- Section 8(b)- Deleted language "Debtor must create a reserve for disputed claims in the

amount of the claim unless the claim is estimates for distribution in a different amount under 11 U.S.C. §

502(c). ... [through] ... Any funds no longer needed in reserve must be returned to Debtor."

I declare, under the penalty of perjury, that the foregoing is true and correct. Executed this   27th

day of  August  2019 ____


/s/ Norman Shaw

Debtor

12

<u>Exhibit 1</u> - **Events that Led to Bankruptcy, Significant Events that Have Occurred During the Bankruptcy, and Summary of Plan.**

The events leading to the bankruptcy included the predatory loan by Washington Mutual Bank and the bank's refusal to honor Debtor's related proper and timely notice of rescission as well as violation of the Truth in Lending Act (TILA). Rather than rescind the loan, the bank moved forward with an improper foreclosure. Debtor has continued to pursue the rescission and TILA matters.

Debtor's plan is to sell the real property and to use the proceeds to pay creditors.

**Exhibit 2** – Liquidation Analysis: What Creditors Would Receive if the Case Were Converted to a Chapter 7.

Real Property #1: [Insert Address]

| Fair Market Value | Liens | Cost of Sale | Resulting Tax | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $2,900.000 | 1st  1,900,000 | 200,000 | 480,000 | 175,000 | 104,022 |
| | Tax 40,978 | | | | |
| | 3rd | | | | |

**Exhibit 2** (continued) – Liquidation Analysis: What Creditors Would Receive if the Case Were Converted to a Chapter 7.

Personal Property:

| Description | Liquidation Value | Secured Claim | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | 200 | | 200 | 0 |
| Automobile #1 | 5,000 | | 5,000 | 0 |
| Household Furnishings | 20,000 | | 20,000 | 0 |
| Jewelry | 500 | | 500 | 0 |
| Equipment | 1000 | | 1000 | 0 |
| Other Personal Property | 8,000 | | 8,000 | 0 |
| TOTAL | | | | 0 |

Summary:

| | | |
|---|---|---|
| Net Proceeds of Real Property and Personal Property | | 104,022 |
| Recovery from Preferences / Fraudulent Conveyances | [ADD] | 0 |
| Chapter 7 Trustee Fees | [SUBTRACT] | 111,750 |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | 40,000 |
| Other Chapter 7 Liabilities | [SUBTRACT] | |
| Unpaid Chapter 11 Liabilities | [SUBTRACT] | |
| Priority Claims (Ford$57,415; IRS $43,500; FTB $12,676; UST Fees $29,000) | [SUBTRACT] | 142,591 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | | -206,319 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | 142,263 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 0% |

Signed by Judge Laura Stuart Taylor December 23, 2019

**Exhibit 2** – Liquidation Analysis: What Creditors Would Receive if the Case Were Converted to a Chapter 7.

Real Property #1: [Insert Address]

| Fair Market Value | Liens | Cost of Sale | Resulting Tax | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $3,300.000 | 1st  1,900,000 | 220,000 | 603,900 | 175,000 | 360,122 |
| | Tax 40,978 | | | | |
| | 3rd | | | | |

**Exhibit 2** (continued) – Liquidation Analysis: What Creditors Would Receive if the Case Were Converted to a Chapter 7.

Personal Property:

| Description | Liquidation Value | Secured Claim | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | 200 | | 200 | 0 |
| Automobile #1 | 5,000 | | 5,000 | 0 |
| Household Furnishings | 20,000 | | 20,000 | 0 |
| Jewelry | 500 | | 500 | 0 |
| Equipment | 1000 | | 1000 | 0 |
| Other Personal Property | 8,000 | | 8,000 | 0 |
| TOTAL | | | | 0 |

Summary:

| | | |
|---|---|---|
| Net Proceeds of Real Property and Personal Property | | 360,122 |
| Recovery from Preferences / Fraudulent Conveyances | [ADD] | 0 |
| Chapter 7 Trustee Fees | [SUBTRACT] | 123,750 |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | 40,000 |
| Other Chapter 7 Liabilities | [SUBTRACT] | |
| Unpaid Chapter 11 Liabilities | [SUBTRACT] | |
| Priority Claims (Ford $57,415; IRS $43,500; FTB $12,676; UST Fees $33,000) | [SUBTRACT] | 146,591 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | | 49,781 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | 142,263 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 35% |

**Exhibit 2** – Liquidation Analysis: What Creditors Would Receive if the Case Were Converted to a Chapter 7.

Real Property #1: [Insert Address]

| Fair Market Value | Liens | Cost of Sale | Resulting Tax | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $3,500.000 | 1st  1,900,000 | 240,000 | 663,300 | 175,000 | 480,722 |
| | Tax 40,978 | | | | |
| | 3rd | | | | |

**Exhibit 2** (continued) – Liquidation Analysis: What Creditors Would Receive if the Case Were Converted to a Chapter 7.

Personal Property:

| Description | Liquidation Value | Secured Claim | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | 200 | | 200 | 0 |
| Automobile #1 | 5,000 | | 5,000 | 0 |
| Household Furnishings | 20,000 | | 20,000 | 0 |
| Jewelry | 500 | | 500 | 0 |
| Equipment | 1000 | | 1000 | 0 |
| Other Personal Property | 8,000 | | 8,000 | 0 |
| TOTAL | | | | 0 |

Summary:

| | | |
|---|---|---|
| Net Proceeds of Real Property and Personal Property | | 480,722 |
| Recovery from Preferences / Fraudulent Conveyances | [ADD] | 0 |
| Chapter 7 Trustee Fees | [SUBTRACT] | 135,750 |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | 40,000 |
| Other Chapter 7 Liabilities | [SUBTRACT] | |
| Unpaid Chapter 11 Liabilities | [SUBTRACT] | |
| Priority Claims(Ford $57,415; IRS $43,500; FTB $12,676; UST Fees $35,000) | [SUBTRACT] | 148,591 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | | 156,381 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | 142,263 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 100% |

16

**Exhibit 3** – Summary of Monthly Operating Reports ("MOR").

| Month | MOR ECF# | Receipts | Distributions | Net |
|---|---|---|---|---|
| 1 March 2018 | 36 | $4260.50 | $417.23 | $ |
| 2 April 2018 | 37 | $1876.00 | $6161.09 | $ |
| 3 May 2018 | 53 | $8591.00 | $7588.40 | $ |
| 4 June 2018 | 71 | $3876.00 | $4445.81 | $ |
| 5 July 2018 | 72 | $3011.00 | $3551.09 | $ |
| 6 August 2018 | 87 | $6986.00 | $6094.70 | $ |
| 7 Sept 2018 | 109 | $7976.00 | $5080.79 | $ |
| 8 Oct 2018 | 110 | $8576.00 | $7765.61 | $ |
| 9 Nov 2018 | 116 | $5600.00 | $7491.73 | $ |
| 10 Dec 2018 | 117 | $8176.00 | $9952.74 | $ |
| 11 Jan 2019 | 124 | $5217.22 | $6241.30 | $ |
| 12 Feb 2019 | 125 | $10,287.40 | $10832.00 | $ |
| 13 March 2019 | 127 | $8719.00 | $6817.42 | $ |
| 14 April 2019 | 140 | $8633.97 | $8993.58 | $ |
| 15 May 2019 | 143 | $3353.40 | 4738.40 | $ |
|  |  |  |  |  |
| Average: |  | $6232.66 | $6105.23 | $ |

Signed by Judge Laura Stuart Taylor December 23, 2019

**Exhibit 4** – Projected Post-Confirmation Monthly Income & Expenses.

| Income | Debtor | Spouse |
|---|---|---|
| 1. Current monthly gross wages, salary, and commissions | N/A | N/A |
| 2. Estimated monthly overtime | N/A | N/A |
| 3. SUBTOTAL | N/A | N/A |
| 4a. Payroll taxes and social security | N/A | N/A |
| 4b. Insurance | $350.00 | 0.00 |
| 4c. Union dues | 0.00 | 0.00 |
| 4d. Other (Specify): | N/A | N/A |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | N/A | N/A |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | N/A | N/A |
| 7. Regular income from operation of business or profession | $8000.00 | 0.00 |
| 8. Income from real property | 0.00 | 0.00 |
| 9. Interest and dividends | 0.00 | 0.00 |
| 10. Alimony, maintenance or support payments | 0.00 | 0.00 |
| 11. Social security or government assistance (Specify): | 0.00 | 0.00 |
| 12. Pension or retirement income | 0.00 | 0.00 |
| 13. Other monthly income (Specify): | 0.00 | 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $8000.00 | 0.00 |
| 15. TOTAL MONTHLY INCOME (Add line 6 and line 14) | $8000.00 | 0.00 |
| A. TOTAL COMBINED MONTHLY INCOME | $8000.00 | |

18

Signed by Judge Laura Stuart Taylor December 23, 2019

**Exhibit 4** ( continued) – **Projected Post-Confirmation Monthly Income & Expenses.**

| Expenses | Amount |
|---|---|
| 1. Rent or home mortgage (include lot rented for mobile home)  Disputed | Disputed |
| 1a. Are real estate taxes included?  Yes [ ]  No [ v ] | $450.00 |
| 1b. Is property insurance included?  Yes [ ]  No [ v ] | $160.00 |
| 2a. Utilities: Electricity and heating fuel | $300.00 |
| 2b. Utilities: Water and sewer | $100.00 |
| 2c. Utilities: Telephone | $105.00 |
| 2d. Utilities: Other | $100.00 |
| 3. Home maintenance (repairs and upkeep) | $400.00 |
| 4. Food | $500.00 |
| 5. Clothing | $50.00 |
| 6. Laundry and dry cleaning | $20.00 |
| 7. Medical and dental expenses | $25.00 |
| 8. Transportation | $300.00 |
| 9. Recreation, clubs, entertainment, newspapers, magazine, etc. | $100.00 |
| 10. Charitable contributions | $50.00 |
| 11a. Insurance: Homeowner's or renter's | $200.00 |
| 11b. Insurance: Life | 0.00 |
| 11c. Insurance: Health | $150.00 |
| 11d. Insurance: Auto | $60.00 |
| 11e. Insurance: Other | $150.00 |
| 12. Taxes: (not deducted from wages or included in home mortgage) | $100.00 |
| 13a. Installment payments: Auto (Do not list payments included in Plan) | 0.00 |
| 13b. Installment payments: Other (Do not list payments included in Plan) | 0.00 |
| 14. Alimony, maintenance, and support paid to others | 0.00 |
| 15. Payments for support of dependents not living at your home | 0.00 |
| 16. Regular expenses from operation of business or profession | $2000.00 |
| 17. Other | 0.00 |
| B. TOTAL MONTHLY EXPENSES | $5320.00 |

| | |
|---|---|
| C. Disposable Income (Line A - Line B) | $2680.00 |

Signed by Judge Laura Stuart Taylor December 23, 2019

<u>**Exhibit 4**</u> ( continued) – **Projected Post-Confirmation Monthly Income & Expenses.**

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims | $0.00 |
| Priority Claims | $0.00 |
| General Unsecured Creditors | $0.00 |
| [OTHER PLAN PAYMENTS - DESCRIBE] | $0.00 |
| D. Total Plan Payments | $0.00 |

| E. Plan Feasibility (Line C - Line D)<br>(Not feasible if less than zero) | $2680.00 |
|---|---|

20

Signed by Judge Laura Stuart Taylor December 23, 2019

<u>Exhibit 5</u> - **Effective Date Feasibility.**

Can the Debtor Make the Effective Date Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | $821,272 |
| Payments Required on Effective Date | | |
| Administrative Expense Claims | $57,415.00 | |
| Priority Claims | 56,176.00 | |
| Small Claims (Class 3(a)) | 2957.00 | |
| U.S. Trustee Fees | 29,000.00 | |
| General Unsecured Claims | 14,208.00* | |
| B. Total Payments on Effective Date | | $159,756.00 |
| C. Net Cash on Effective Date (Line A - Line B) (Not feasible if less than zero) | | $661,516.00 |

| | |
|---|---|
| 308 Corto Sale Price (worst case) | $2,900,000 |
| Sale Commission @ existing 3.75% | -108.750 |
| Closing Costs @ 1% | - 29,000 |
| JP Morgan Chase (worst case) | - 1,900,000 |
| Franchise Tax Board Lien | - 40,978 |
| Remaining Balance | 821,272 |

- Nelnet claim of $125,087.86 to be paid over time pursuant to contract.

Signed by Judge Laura Stuart Taylor December 23, 2019